IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| N653CT, LLC, a Montana limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>PLAYERS AIR, INC., a Nevada corporation, CURTIS L. BASTA, a Utah resident, and JAMES HINCKLEY, a Utah resident,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:07-CV-683<br><br>Judge Dee Benson |

This matter is before the court on defendants Players Air, Inc. ("Players"), Curtis L. Basta ("Basta"), and James Hinckley's ("Hinckley") (collectively "defendants") motion for summary judgment (Dkt. No. 46) and plaintiff N653CT LLC's ("N653CT") motion for partial summary judgment (Dkt. No. 49). A hearing on the motions was held on December 29, 2009. At the hearing, defendants were represented by Justin T. Toth. N653CT was represented by Michael D. Johnston. At the conclusion of the hearing the court announced it was inclined to deny N653CT's motion and grant in part defendants' motion. Now, consistent with that preliminary view, and having taken the motions under advisement, the court has further considered the law and facts relating to the motions and renders the following Memorandum Opinion and Order.

BACKGROUND

This action centers on a purchase agreement between N653CT and Players, in which N653CT contracted to purchase a used Embraer 120 "Brasilia" airplane (FAA Registration No.

N204SW) (the "Aircraft") from Players for $1.8 million. (*See* Used Aircraft Purchase Agreement ("UAPA") at 1.) N653CT, through Business Aircraft Group[1], drafted the UAPA.

## A. Used Aircraft Purchase Agreement

The UAPA is an unsophisticated two-page instrument. The UAPA obligates Players to deliver the Aircraft to N653CT in an airworthy condition, or in a condition that conforms with FAA requirements. (UAPA at 1.) The UAPA also makes N653CT's purchase of the Aircraft contingent on its right to inspect the Aircraft and its records. (*Id*.) On the front page, the UAPA announces in capital letters,

> SELLER MAKES NO REPRESENTATIONS OR WARRANTIES EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE THE AIRCRAFT IS SOLD IN "AS IS" CONDITION UNLESS OTHERWISE SPECIFICALLY STATED. . . .
>
> PURCHASER HEREBY RECOGNIZES THAT THE AIRCRAFT SOLD HEREIN IS A USED AIRCRAFT AND MAY CONTAIN MATERIAL DEFECTS. THIS ASSUMPTION PROVIDES THE BASIS FOR THIS AGREEMENT.

(UAPA at 1.) On the second page, the terms and conditions of the UAPA provide that "[a]cceptance of the Aircraft, as evidenced by a written receipt acknowledging delivery, shall constitute Purchaser's agreement that the Aircraft conforms to the specifications, standards and other requirements of this Agreement or is otherwise acceptable to Purchaser." (UAPA at 2.)

On or about December 12, 2006, Business Aircraft Group arranged for a pre-purchase inspection of the Aircraft that lasted approximately two-and-a-half days. On December 29, 2006, N653CT and Players executed the UAPA. In early January 2007, Business Aircraft Group told

---

[1] Business Aircraft Group is a company that provides aircraft management services, including aviation consulting, aircraft acquisition assistance, and oversight and management of pre-purchase inspections. After N653CT developed an interest in the Aircraft, N653CT entered into an agreement with Business Aircraft Group in which it agreed to assist N653CT in purchasing the Aircraft.

N653CT that it had inspected the Aircraft, that it looked good, and recommended that N653CT should purchase the Aircraft. On or around January 21 or 22, 2007, N653CT tendered payment to Players for the Aircraft. On January 26, 2007, Players delivered the Aircraft to N653CT and N653CT accepted the Aircraft at the time of delivery. At this time, Players also delivered to N653CT all of the records in its possession relating to the Aircraft. Sometime thereafter, N653CT alleges that it learned that Players delivered the Aircraft in a condition that was not airworthy.

### B. The Conversion Agreement

On January 22, 2007, the parties also executed a Conversion Agreement in conjunction with the sale of the Aircraft. The Conversion Agreement is a separate agreement that the parties intended to move them towards executing a "master agreement" where Players, N653CT, and other companies would merge to create another business entity. Mr. Basta and Mr. Hinckley are two of Players' common shareholders, referred to by the parties as "Players Principals." For the purposes of summary judgment, the parties focus particular attention on the agreement language that states:

> Representations. Players has supplied and shall continue to supply to AHC, CAT and Buyer One (i) financial data concerning its performance during 2006, its December 31, 2006 balance sheet and its performance in 2007, (ii) information concerning the operating history of its aircraft, and (iii) data concerning its indebtedness, accounts payable, contingent liabilities, business model, marketing and sales programs and channels, and employee performance. The Players Common Shareholders are all of the holders of any equity interest in Players, other than the Players Preferred Shares to be created in the conversion hereunder. The Players Principals have supplied to AHC, CAT and Buyer One financial data concerning their personal net worth. Players and the Players Principals represent and warrant to AHC, CAT, and Buyer One that all such information which has been or will be supplied is materially accurate and complete and that there has been no material omission of information necessary to prevent the information which has been supplied from being misleading.

(Conversion Agreement at 2.)

**C. Complaint**

On September 13, 2007, N653CT sued Players, Mr. Basta and Mr. Hinckley. N653CT's complaint asserts three claims for relief. In the first claim for relief, N654CT alleges that Players breached the UAPA and Mr. Basta and Mr. Hinckley breached the Conversion Agreement. In the second claim for relief, N653CT alleges that Players is liable for negligent misrepresentation. In the third claim for relief, N653CT claims that Players is liable for intentional misrepresentation. For the above claims, N653CT requests compensatory damages, exemplary damages, attorneys' fees, and any other relief the court deems proper.

**D. Motions for Summary Judgment**

On June 22, 2009, defendants moved for summary judgment on all of N653CT's claims. In their supporting memoranda, defendants argue that they are entitled to summary judgment because they did not violate any term of the UAPA or Conversion Agreement. They also argue that they are entitled to judgment as a matter of law on the intentional and negligent misrepresentation claims because N653CT cannot prove certain essential elements, including reliance.

On July 9, 2009, N653CT moved for partial summary judgment on its breach of contract claims. N653CT argues that it is entitled to summary judgment because Players breached the UAPA by failing to provide the Aircraft in an airworthy condition as required by the contract. N653CT also argues that the Conversion Agreement made Mr. Basta and Mr. Hinckley personally liable for Players' actions and/or omissions.

For the reasons expressed below, defendants' motion for summary judgment is granted in part and N653CT's motion for partial summary judgment is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The court must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *See id.* at 255.

DISCUSSION

The UAPA and Conversion Agreement contain Ohio choice of law provisions. (*See* UAPA at 2; Conversion Agreement at 2.) In construing any written instrument, the primary objective is to ascertain the parties' intent. *See Beverly v. Parilla*, 848 N.E.2d 881, 886 (Ohio App. 2006). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 411 (Ohio 1987). Therefore, when the language of a contract is clear and unambiguous, the interpretation of the contract is a matter of law, and the court must determine the intent of the parties through only the language employed. *Davis v. Loopco Indus., Inc.*, 609 N.E.2d 144, 145 (Ohio 1993); *see also Motorist Mut. Ins. Co. v. Tomanski*, 271 N.E.2d 924, 927 (Ohio 1971) (courts are bound by the unambiguous terms of a contract and cannot "read into [the] contract meaning which was not placed there by an act of the parties"). However, where a contract contains ambiguities, a court may consider extrinsic evidence to ascertain the intent of the parties and the meaning of a the contract's terms. *Beverly*, 848 N.E.2d at 886. Summary judgment is improper when an ambiguous contract is coupled with material issues of fact. *Inland Refuse Transfer Co. v.*

*Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 273 (Ohio 1984).  Contract language "is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning."  *Beverly*, 848 N.E.2d at 886.

### A. Breach of Used Aircraft Purchase Agreement

Both parties argue that they are entitled to summary judgment on N653CT's claim that Players breached the UAPA.  Players argues that it did not breach the UAPA because N653CT's acceptance of the aircraft constituted its agreement that the Aircraft was airworthy and conforming with the UAPA.  Players acknowledges its obligation in the UAPA to deliver an airworthy airplane, but argues that N653CT is attempting to avoid its explicit agreement, that the Aircraft was acceptable, by seeking to recover for conditions in the Aircraft that could have been discovered in the inspection process.  Furthermore, Players argues that N653CT's claim ignores the UAPA's explicit disclaimers regarding the "AS IS" condition of the Aircraft.

Conversely, N653CT contends that Players breached the UAPA when it failed to provide the Aircraft "in an airworthy condition" with "original, continuous and complete records" and in "a condition that conforms with all FAR Part 135 requirements."  (*See* UAPA, at 1.)  N653CT argues that its acceptance of the Aircraft only terminated its right to return the Aircraft, not its right to sue Players for delivering an Aircraft that failed to comply with the UAPA's requirements.

The court finds that N653CT's acceptance of the Aircraft precludes N653CT's claim for breach of the UAPA.  The UAPA reads in pertinent part,

> Acceptance of the Aircraft, as evidenced by a written receipt acknowledging delivery, shall constitute Purchaser's agreement that the Aircraft conforms to the specifications, standards and other requirements of this Agreement or is otherwise acceptable to Purchaser.

(*See* UAPA at 2.)  The UAPA unambiguously and plainly states that N653CT's acceptance of the Aircraft constituted its agreement that the Aircraft met the terms of the UAPA or was otherwise acceptable.  Having agreed that the Aircraft is conforming and acceptable, N653CT cannot now sue Players claiming the Aircraft is nonconforming and unacceptable.  N653CT was not forced to include this provision in the UAPA.  Having done so, N653CT must live with the language it chose.  Defendants' motion for summary judgment on N653CT's claim for breach of the UAPA is granted and N653CT's motion is denied.  Accordingly, N653CT's claim that Players breached the UAPA is dismissed.

**B.  Breach of the Conversion Agreement**

Both parties argue that they are entitled to summary judgment on N653CT's claim that Mr. Basta and Mr. Hinckley breached the Conversion Agreement.  In its complaint, N653CT claims that (1) Mr. Basta and Mr. Hinckley breached the Conversion Agreement when Players provided inaccurate information about the Aircraft to N653CT; and (2) the Conversion Agreement made Mr. Basta and Mr. Hinckley personally responsible to cover damages that result from Players' breach of the UAPA.

*1.  Warranty of Information*

N653CT argues that Mr. Basta and Mr. Hinckley breached the Conversion Agreement when Players provided inaccurate information about the Aircraft to N653CT.  The Conversion Agreement states as follows:

> Representations.  Players has supplied and shall continue to supply to AHC, CAT and Buyer One (i) financial data concerning its performance during 2006, its December 31, 2006 balance sheet and its performance in 2007, (ii) information concerning the operating history of its aircraft, and (iii) data concerning its indebtedness, accounts payable, contingent liabilities, business model, marketing and sales programs and channels, and employee performance.  The Players Common Shareholders are all of the holders of any equity interest in Players, other than the Players Preferred Shares to be created in the conversion hereunder.  The Players

> Principals have supplied to AHC, CAT and Buyer One financial data concerning their personal net worth. *Players and the Players Principals represent and warrant to AHC, CAT, and Buyer One that all such information which has been or will be supplied is materially accurate and complete and that there has been no material omission of information necessary to prevent the information which has been supplied from being misleading.*

(Conversion Agreement at 2 (emphasis added).) N653CT contends that at the conclusion of this paragraph Mr. Basta and Mr. Hinckley personally warranted information provided by Players to N653CT. Conversely, defendants argue that the language does not obligate Mr. Basta and Mr. Hinckley with regards to the Players information.

The court finds that the contract language in question is ambiguous. Both parties' positions find support in the language on its face. After a careful review of the record, the court concludes there is an absence of evidence that clearly supports either party's interpretation. Therefore, summary judgment is inappropriate. The court denies both motions on this claim.

    2.  *Personal Guarantee to Cover Damages*

N653CT also argues that according to the terms of the Conversion Agreement, Mr. Basta and Mr. Hinckley are responsible to make additional capital available in the event that Players lack sufficient capital to cover damages caused by Players' breach of the UAPA. For purposes of summary judgment, this claim fails as a matter of law because the court dismissed N653CT's claim that Players breached the UAPA. The court grants defendants' motion and denies N653CT's motion on this claim.

**C.  Other Claims**

The court reserves judgment on N653CT's negligent and intentional misrepresentation claims. As discussed at the hearing, the court orders supplemental briefing from the parties addressing the implications of the economic loss doctrine and fraudulent inducement. The parties are to agree upon and propose a briefing schedule to the court.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED IN PART and N653CT's motion for partial summary judgment is DENIED. Accordingly, N653CT's claim that Players breached the UAPA is dismissed. N653CT's claim that Mr. Basta and Mr. Hinckley breached the Conversion Agreement when Players provided inaccurate information about the Aircraft to N653CT survives summary judgment. N653CT's claim that according to the terms of the Conversion Agreement, Mr. Basta and Mr. Hinckley are responsible to cover damages caused by Players' breach of the UAPA is dismissed. The court reserves judgment on N653CT's negligent misrepresentation and intentional misrepresentation claims.

IT IS SO ORDERED.

DATED this 5th day of February, 2010.

Dee Benson
United States District Judge